IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| DEBBIE DRINKARD and<br>SHANNON COLLINS, | )<br>)<br>) | |
| Plaintiffs, | )<br>) | |
| v. | )<br>) | No. 2:08-CV-005 |
| STATE OF TENNESSEE DEPARTMENT<br>OF CHILDREN'S SERVICES and<br>DONNA L. MYERS, personally and as an<br>investigator for the State of Tennessee, | )<br>)<br>)<br>)<br>) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This civil action is before the court on the motion to dismiss filed by defendant Donna L. Myers individually [doc. 3] and the motion to dismiss filed by defendants State of Tennessee Department of Children's Services ("DCS") and Donna L. Myers in her official capacity [doc. 5]. Myers's individual motion is brought under Rule 12(c) of the Federal Rules of Civil Procedure, whereas the remaining defendants' motion is brought under Rule 12(b)(6). Plaintiffs have responded to each motion [docs. 13-16]. For the reasons that follow, both motions will be granted and this civil action will be dismissed in its entirety.

I.

*Applicable Legal Standards*

The Federal Rules authorize dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "A Rule 12(b)(6) motion tests whether a

cognizable claim has been pleaded in the complaint. Rule 8(a) sets forth the basic federal pleading requirement that a pleading 'shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988) (quoting Fed. R. Civ. P. 8(a)).

Motions for judgment on the pleadings are authorized by Rule 12(c). Courts apply the same standard to Rule 12(b)(6) and Rule 12(c) motions. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) (citing *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)).[1]

"When evaluating a motion to dismiss brought pursuant to rule 12(b)(6), the factual allegations in the complaint must be regarded as true. The claim should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Windsor v. Tennessean*, 719 F.2d 155, 158 (6th Cir. 1983) (internal citations omitted). "Although this standard for Rule 12(b)(6) dismissals is quite liberal, more than bare assertions of legal conclusions is ordinarily required to satisfy federal notice pleading requirements. In practice, a . . . complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory." *Scheid*, 859 F.2d at 436 (internal citations and

---

[1] The court notes that the pleadings have not yet closed in this case. *See* Fed. R. Civ. P. 7(a). Accordingly, Myers's Rule 12(c) motion (captioned in material part "motion . . . to dismiss for failure to state a claim") will instead be construed as a motion brought under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(c) (motions for judgment on the pleadings are filed "[a]fter the pleadings are closed").

quotations omitted) (emphasis in original).

II.

*State Defendants*

The complaint alleges that this "is a federal question, civil rights action under 42 U.S.C.S. § 1983, for violation of Plaintiff's [sic] due process rights as protected by the Fourteenth Amendment of the United States Constitution[.]" [Doc. 1, ¶ 4]. Plaintiffs elsewhere purport to be suing "in tort for official misconduct, intentional infliction of emotional distress, and the negligent infliction of emotional distress[.]" [Doc. 1, p. 1].

Section 1983 imposes liability on a "*person* who, under color of any [law] . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws[.]" 42 U.S.C. § 1983 (emphasis added). "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). DCS, as an agency of the State of Tennessee, is also not a "person" under § 1983. *See Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003). Plaintiffs' federal claim against DCS must therefore be dismissed.

The complaint identifies Myers as an investigator with the Tennessee Department of Mental Health and Retardation ["DHMHR"]. Suit against Myers in her official capacity is in fact a suit against her employing agency. *See Will*, 491 U.S. at 71.

3

DMHMR is an agency of the State of Tennessee and thus is not a "person" under § 1983. *See Tenn. DMHMR v. Hughes*, 531 S.W.2d 299 (Tenn. 1975); *Cashion v. Robertson*, 955 S.W.2d 60 (Tenn. Ct. App. 1997). Plaintiffs' federal claim against Ms. Myers in her official capacity must therefore be dismissed.

Dismissal of all of plaintiffs' claims against DCS and against Myers in her official capacity is also mandated by the Eleventh Amendment, which has been construed as a guarantee that nonconsenting states cannot be sued for money damages by private individuals in federal court. *See Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). A state enjoys sovereign immunity unless it has consented to suit "by the most express language or by such overwhelming implications from the text [of a waiver] as (will) leave no room for any other reasonable construction," *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (citation and quotation omitted), or where Congress has validly, "explicitly[,] and by clear language" abrogated the immunity. *Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Plaintiffs' complaint seeks only money damages. DCS and DMHMR are entitled to the State of Tennessee's Eleventh Amendment immunity unless that immunity has been waived or abrogated. *See Gean*, 330 F.3d at 766; *Hughes*, 531 S.W.2d 299; *Cashion*, 955 S.W.2d 60. The court finds no suggestion that the State of Tennessee has waived its Eleventh Amendment immunity with respect to the causes of action contained in plaintiffs' complaint. *See* Tenn. Code Ann. § 20-13-102; *see also Johnson v. S. Cent. Human Res. Agency*, 926 S.W.2d 951, 952-53 (Tenn. Ct. App. 1996) (State agencies are immune from

suit for intentional infliction of emotional distress). All claims against DCS and Myers in her official capacity must accordingly be dismissed on Eleventh Amendment grounds.

III.

*§ 1983 and Myers Individually*

The court next turns to plaintiffs' federal claim against Myers in her individual capacity. As noted above, factual allegations in plaintiffs' complaint must at this stage be accepted as true. Legal conclusions and unwarranted factual inferences, however, need not be credited. *Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005).

The complaint identifies Collins as the biological father of toddler A.T.C. [Doc. 1, ¶ 2]. Drinkard is identified as A.T.C.'s paternal grandmother. [Doc. 1, ¶ 1].[2]

According to the complaint, "Defendants conspired to improperly remove [A.T.C.] from the physical possession of Ms. Drinkard, under the color of state authority, with the intent to gain permanent custody of the minor child." [Doc. 1, ¶ 1]. DCS, "through Barbara Britton, Child Protection Services Team Leader, . . . conspired with Defendant, Donna L. Myers, investigator with [DHMHR] . . . to fraudulently remove Plaintiff, Ms.

---

[2] In response to the pending motions, plaintiffs have submitted a state court agreed order signed by Collins's attorney [doc. 16]. Curiously, Collins therein affirms a prior state court allegation "that he is not the biological father to" A.T.C. If true, that allegation decimates plaintiffs' constitutional claims.

5

Drinkard's[,] grandchild from her custody." [Doc. 1, ¶ 2].[3] Myers is identified as a former DCS investigator. [Doc. 1, ¶ 13].

The complaint alleges that A.T.C.'s mother was found dead in her home on January 3, 2007. [Doc. 1, ¶ 6]. Drinkard went to the home that night, where she "was given physical custody of" A.T.C. by Greene County Sheriff Steve Burns. [Doc. 1, ¶ 7]. Myers subsequently, "with a Greene County Deputy Sheriff, came running up to Ms. Drinkard's car and told Ms. Drinkard that she was taking" A.T.C. [Doc. 1, ¶ 7]. Drinkard told Myers that she intended to take A.T.C. to visit Collins at the Greene County Workhouse where he was incarcerated but, "The officer, Deputy Mike Fincher, approached Ms. Drinkard and told her that she had to wait for [DCS] to arrive." [Doc. 1, ¶ 8]. The remaining factual allegations pertaining to the events of January 3, 2007, are as follows:

> 9. Ms. Myers spoke on a telephone for a few minutes, and Ms. Barbara Britton arrived at the scene. Detective [sic] Fincher then came to Ms. Drinkard and told her that [A.T.C.] had to ride with Ms. Myers to the Greene County Workhouse.
>
> 10. Ms. Drinkard followed Ms. Britton to the Greene County Workhouse for [A.T.C.] to visit the child's Father, Shannon Collins.
>
> 11. While still at the house, with Ms. Britton observing from the driveway, Detective [sic] Fincher advised Ms. Drinkard to hand [A.T.C.] to Ms. Myers, a stranger to the child.

---

[3] It is noted that the complaint contains two paragraph 2's and two paragraph 7's. The court will cite the paragraphs as numbered by plaintiffs.

> 12. Ms. Drinkard, the Grandmother, complied with the direction given by Dep. Fincher, assuming that DCS had the authority over the child because of Ms. Britton's presence.

[Doc. 1].

A private individual may be considered a state actor for § 1983 purposes when her allegedly wrongful conduct is fairly attributable to the state. *Tahfs v. Proctor*, 316 F.3d 584, 590-91 (6th Cir. 2003) (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). First, to determine whether actions are fairly attributable to the state, "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the [S]tate or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 937. Second, the party charged with the deprivation must "fairly be said to be a state actor . . . because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.* These two distinct principles merge somewhat when the alleged constitutional violation is caused by a public official. *Id.*

The court finds that plaintiffs' claim against Myers individually fails on both considerations. The complaint contains the legal conclusion (which the court need not credit) that on January 3, 2007, Myers "fraudulently present[ed]" herself "as performing under the color of the legal state authority commonly associated with" her former DCS employment and her current DHMHR employment. [Doc. 1, ¶ 13]. However, the complaint does not *factually* allege that the purported constitutional deprivation was "caused by the exercise of

some right or privilege created by the State . . . or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 937. Plaintiffs' factual allegations instead portray a defendant who was acting on her own as a private citizen.

At its second paragraph 7, the complaint alleges only that Myers told Drinkard "that she was taking the minor child." At paragraph 8, Drinkard acknowledges being told by a deputy sheriff "that she had to wait for [DCS] to arrive." Drinkard thus knew that Myers was not a DCS employee and that she was not acting under DCS authority. At paragraph 9, plaintiffs allege that "Myers spoke on a telephone a few minutes, and Ms. Barbara Britton arrived at the scene." Strikingly, plaintiffs do not allege that it was Britton with whom Myers spoke on the telephone, or that the conversation and Britton's arrival were in any way related. Lastly, the allegation that "with Ms. Britton observing from the driveway, Detective [sic] Fincher advised Ms. Drinkard to hand the minor child to Ms. Myers" does not sufficiently suggest that the purported constitutional deprivation was caused by anything other than by Myers's independent conduct. Merely "[b]ecause one holds a job with the state does not make his every action one done under 'color of law' within the context of section 1983." *Garrett v. Huffman*, No. 88-5778, 1989 WL 46979, at *2 (6th Cir. May 8, 1989). Thus, the court finds no state action under *Lugar*'s first test.

Because Myers is a state employee, the court's analysis pertaining to the second *Lugar* test largely merges with that of the first. *Lugar*, 457 U.S. at 937. The second inquiry considers whether the individual defendant's conduct makes her a state actor for § 1983

8

purposes. That determination requires three considerations: the nexus, public function, and state compulsion tests. *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000).

> The nexus test requires that a sufficiently close relationship exist between the state and the private actor (through regulation or by contract) so that private action may be attributable to the state. The public function test requires that the private actor exercise powers that are traditionally reserved to the state. And, the state compulsion test requires proof that the state significantly encouraged or coerced the private actor, either overtly or covertly, to take a particular action so that the choice is actually that of the state.

*Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (internal citations omitted).

The court finds none of these considerations satisfied. As discussed above, the *factual* allegations of the complaint do not suggest that Myers was acting other than on her own as a private citizen and as a combatant in a child custody battle. There is no *factual* allegation or warranted inference that Myers used her state authority, or that Britton and DCS "significantly encouraged or coerced" her conduct. "It is well settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987). Again, the present complaint's legal conclusions are insufficient to survive Rule 12(b)(6) dismissal.

In the alternative, the court concludes that the complaint should be dismissed on statute of limitations grounds. Plaintiffs' § 1983 claim is subject to a one year statute of

limitations. *See Holmes v. Donovan*, 984 F.2d 732, 738 n.11 (6th Cir. 1993); Tenn. Code Ann. § 28-3-104(a)(3). The incident underlying this suit occurred on Wednesday, January 3, 2007. Plaintiffs did not file their complaint until Monday, January 7, 2008.

Plaintiffs argue that application of either the discovery rule or the continuing violation doctrine renders their suit timely. Under the discovery rule, a limitations period does not commence until "the plaintiff knows *or in the exercise of reasonable care and diligence should know* that an injury has been sustained as a result of wrongful or tortious conduct by the defendant." *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 143 (Tenn. 2001) (citation and quotation omitted) (emphasis added); *see also Sevier v. Turner*, 742 F.2d 262, 272-73 (6th Cir. 1984) (In Tennessee litigation brought under federal civil rights laws, the statute of limitations begins to run when the plaintiff knows, or has reason to know through the exercise of reasonable diligence, of the injury that is the basis of his action.).

Conversely, "The doctrine of continuing violations provides that a plaintiff may be granted relief for a time-barred act by linking a series of related acts, one or more of which falls within the limitations period." *Frazier v. Heritage Fed. Bank for Savings*, 955 S.W.2d 633, 637 (Tenn. Ct. App. 1997). The discovery rule does not apply in continuing violation cases. *Booker v. Boeing Co.*, 188 S.W.3d 639, 649 (Tenn. 2006). "The inquiry is whether the earlier acts were related closely enough to constitute a continuing violation or were merely discrete, isolated, and completed acts which must be regarded as individual violations." *Frazier*, 955 S.W.2d at 638 (citation and quotations omitted).

Plaintiffs in fact present a hybrid continuing violation/discovery rule argument. They contend that Drinkard assumed Myers's actions to be lawful on January 3, 2007, and that neither plaintiff was aware of a potential constitutional violation until Collins was served in jail with a copy of a custody petition filed by Myers. The court first notes that in their dispositive motion responses plaintiffs attempt to introduce myriad factual allegations not contained in the complaint. These allegations include the date Myers allegedly filed the custody petition and the date Collins allegedly was served. None of these factual allegations have been properly brought before the court by affidavit or other evidentiary means. As such, none of plaintiffs' additional allegations have been considered.

Instead, for purposes of the present motions, the court looks solely to the factual allegations *of the complaint*. The complaint does mention Myers's custody petition but does not allege on what date the petition was filed. The reader is unable to infer whether the petition was filed *after* the events of January 3, 2007, or whether Myers had initiated the custody suit before that date. The complaint further contains no allegations regarding when the state court petition was served on Collins. Again, the allegations in plaintiffs' response briefs have not been properly placed before the court and have not been considered. The only document attached to either brief is a copy of the state court agreed order in which Collins denies being A.T.C.'s biological parent. That order references a prior January 4, 2007 custody order but in no way establishes the date that the petition was filed or the date Collins was served.

Plaintiffs' timeliness arguments pertaining to the state court petition thus are not well-taken. Again, the court returns as it must to the *factual* allegations of the complaint and the reasonable inferences to be drawn therefrom. Plaintiffs were aware on January 3, 2007, of Myers's attempts to take physical custody of A.T.C. [Doc. 1, ¶¶ 7, 11-12]. They were also aware on that date that Myers was not a representative of DCS. [Doc. 1, ¶ 8]. Plaintiffs therefore on January 3, 2007, knew of the injury that is the basis of their action, or at least had reason to know through the exercise of reasonable diligence. The federal complaint filed on January 7, 2008, is thus untimely and, for this additional reason, must be dismissed.

IV.

*State Law Claims Against Myers Individually*

The complaint identifies plaintiff Drinkard as a resident of the State of Tennessee. [Doc. 1, ¶ 1]. The complaint is silent as to the citizenship of plaintiff Collins [doc. 1, ¶ 2] and defendant Myers [doc.1, ¶ 2]. Plaintiffs have thus failed to demonstrate that this court has diversity jurisdiction over their state law tort claims against Myers individually. *See* 28 U.S.C. § 1332(a). Additionally, the court does not have supplemental jurisdiction since plaintiffs' remaining claims have been dismissed. *See* 28 U.S.C. § 1367. Plaintiffs' state law claims against Myers individually thus must also be dismissed for lack of subject matter jurisdiction.

An order consistent with this opinion will be entered.

ENTER:

s/ Leon Jordan<br>United States District Judge